# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| JESSICA COCKRAM, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 09-01007-CV-W-JTM |
| | ) | |
| GENESCO, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# ORDER

In 2008, plaintiff Jessica Cockram ("Cockram") was employed at a Journeys shoe store. Journeys is owned by defendant Genesco, Inc. ("Genesco"). In October of 2008, Genesco fired Cockram after a customer at the Journeys store complained about a receipt that contained a racially offensive epithet. A year later, on October 16, 2009, Cockram sued Genesco alleging causes of action for defamation, false light invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress. In a prior order, the Court dismissed all of Cockram's claims with the exception of the defamation allegation. Presently pending before the Court is Genesco's motion for summary judgment on the remaining defamation claim. Genesco argues that summary judgment is mandated because the material facts about which there is no genuine dispute establish that: (1) Cockram cannot show that Genesco's alleged defamatory statement was false, (2) Genesco's alleged defamatory statement was not published with the requisite degree of fault, and (3) Cockram cannot show that her reputation was damaged.

In October of 2008, Cockram had been employed by Genesco at one of its Journeys stores for over two years. At the time of the incident in question, Cockram was a co-manager at the Journeys store in Oak Park Mall in Overland Park, Kansas. Cockram was working on the evening of October 17, 2008. On that date, Keith Slater, an African American, came into the Journeys store to return a pair of shoes that he had previously purchased. Cockram assisted Mr. Slater is completing the merchandise return.

In processing the return, Cockram accessed a Journeys' cash register and caused a "transaction menu" to appear. From the menu that appeared on her screen, Cockram scrolled down to the third option ("Return") and hit the enter key on the cash register. The register then displayed an "enter information" screen (which permits a Journeys employee to look up a customer's account by e-mail address, telephone number, or last name). Cockram scrolled down to the telephone number option, typed in the telephone number 913-555-5555[1], and again hit the enter key on the cash register. Thereafter, Cockram's screen displayed multiple customer names. Cockram scrolled down to the fourth customer name on the screen and again hit the enter key on the cash register. The fourth customer name was "DUMB N****R."[2] Cockram claims that she never read the screen entry and that she never seriously looked at the screen while conversing with the customer.

---

[1] The area code is the one applicable to Overland Park, Kansas. The parties have some dispute over the reason for the entry of the fictitious telephone number in this case. Cockram argues that the entry of the fictitious telephone number was taught to her by Journeys' management to speed up returns when the store was busy. In this case, however, the dispute is immaterial to the legal decision before the Court.

[2] The display of the racial epithet on the cash register screen was not expurgated, although it will be throughout this opinion. The cash register further showed an address for this "customer as "81811 HEIL HITLER ROAD 420 FOOD STAMP AVENUE, WHITE POWER, KS" and a catalog code of "DIE N****R."

At the completion of the merchandise return, a receipt was printed out that included the phrase: "CUST: DUMB N****R." Cockram then signed the receipt (though she claims she never read the receipt) and handed it to Mr. Slater. Mr. Slater apparently did not read the receipt at that time and left the store.

The following day, a Saturday, however, Mr. Slater and several of his relatives returned to store and confronted Cockram with the receipt. By all accounts, a near riot erupted in the store. On that same day, crews from local television stations arrived at the Oak Park Mall Journeys store wishing to speak with the employee who had given Mr. Slater the receipt. Over the next several days there was considerable coverage of the incident in the Kansas City media.

On Monday, October 20, 2008, Genesco terminated Cockram. At the same time, Gensco was responding to media inquiries with the oral statement: "As a matter of corporate policy we are investigating the matter and beyond that we have no comment." As the media requests continued, however, and in light of boycott calls from some community activists, Genesco issued a written statement that read in full:

> While we are continuing to investigate this incident, it now appears that an employee in one of our stores entered a highly inappropriate statement in a form used to process [a] merchandise return. Needless to say, such an act was not authorized by Journeys, and will not be tolerated. This employee has been terminated.
>
> At Journeys, we pride ourselves on valuing and respecting every customer. We are shocked and sickened that a former associate could be responsible for an act so out of keeping with our culture and our values. We profoundly regret this incident.

In the present litigation, Cockram alleges that the above-quoted media statement was defamatory. In addition, Cockram has identified an additional statement later sent by Genesco to the media as being defamatory. That statement, in relevant part, stated:

> The inappropriate references were entered by employees in the Overland Park store in [a] store-level customer database. No pre-programmed transaction codes were involved.

The Court will consider these two statements in analyzing the propriety of summary judgment.[3]

The parties are in agreement that Missouri substantive law governs the case. Under that law, a plaintiff must establish the following in a defamation claim:

---

[3] In her summary judgment pleadings, Cockram complains that Genesco has improperly attempted to limit her allegations of defamation. Cockram asserts that the defamatory statements "are too numerous" to even summarize. Cockram then refers the Court to *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 313 (Mo. 1993) (*en banc*) for the proposition that under Missouri pleading rules, she was not required to include the exact language of a defamatory statement in her pleadings, but need only present the gist of the defamatory material. While *Nazeri* does apply a looser standard to oral slander claims, the case also makes clear that in cases of written libel, Missouri law still requires that a "plaintiff must make her allegations in *haec verba*, or in the exact words alleged to be defamatory." *Id.* (*citing Brown v. Adams*, 715 S.W.2d 940, 941 (Mo. App. [W.D.] 1986). In any event, the present case is in federal court and the present motion is not an attack on the sufficiency of the pleading, but on the legal sustainability of Cockram's defamation claim. In response to Genesco's well-supported motion for summary judgment, Cockram has identified with specificity only two allegedly defamatory statements. Consequently those are the only two claims considered.

> [A] district court is not obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.

*Jaurequi v. Carter Manufacturing Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999). *See also Brasic v. Heinemann's Inc.*, 121 F.3d 281, 285 (7th Cir. 1997) (it is not a district court's task to "scour the record in search of a genuine issue of triable fact" because the court relies on nonmoving party to identify with "reasonable particularity the evidence that precludes summary judgment"); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.").

4

>> (1) publication,
>
> (2) of a defamatory statement,
>
> (3) that identifies the plaintiff,
>
> (4) that is false,
>
> (5) that is published with the requisite degree of fault, and
>
> (6) damages the plaintiff's reputation.

*State ex rel. BP Products North America Inc. v. Ross*, 163 S.W.3d 922, 929 (Mo. 2005) (*en banc*); *Overcast v. Billings Mutual Insurance Co.*, 11 S.W.3d 62, 70 (Mo. 2000) (*en banc*).

Genesco's first argument for summary judgment is that the material facts about which there is no genuine dispute to establish that the two subject statements were not false. In that regard, Missouri law provides:

> The test to be administered in determining accuracy is whether the [alleged defamatory statement] is substantially true. It is not necessary that the precise facts contained in the report are literally true. Slight inaccuracies of expression are immaterial if the defamatory charge is true in substance.

*Turnbull v. Herald Co.*, 459 S.W.2d 516, 519 (Mo. App. [E.D.] 1970) (*internal citations omitted*). With that test in mind, then the Court will analyze the two allegedly defamatory statements.[4]

---

[4] Missouri law generally lists falsity as an element of defamation that must be established by a plaintiff. However, in *Kenney v. Wal-Mart Stores, Inc.*, 100 S.W.3d 809, 814 n.2 (Mo. 2003) (*en banc*), the court noted that there may be some issue as to whether a plaintiff bears the burden of proving falsity or whether the defendant bears the burden of proving truthfulness. Rather than attempt to resolve that potentially thorny constitutional issue, the Court will assume that Genesco bears the burden of proving as an affirmative defense that the alleged defamatory statements were substantially truthful. *Compare Weger v. City of Ladue*, 500 F.3d 710, 718-21 (8th Cir. 2007) (affirming summary judgment granted to defendant who had established an affirmative defense as a matter of Rule 56 law).

As previously quoted, on October 21, 2008, Genesco released a media statement which read:

> While we are continuing to investigate this incident, it now appears that an employee in one of our stores entered a highly inappropriate statement in a form used to process [a] merchandise return. Needless to say, such an act was not authorized by Journeys, and will not be tolerated. This employee has been terminated.
>
> At Journeys, we pride ourselves on valuing and respecting every customer. We are shocked and sickened that a former associate could be responsible for an act so out of keeping with our culture and our values. We profoundly regret this incident.

In her summary judgment pleadings, Cockram identifies six alleged falsehoods in this media statement:

(1) Cockram "entered a highly inappropriate statement in a form used to process [a] merchandise return,"

(2) the action "was not authorized by Journeys,"

(3) the action "will not be tolerated" by Journeys,

(4) Journeys was "shocked and sickened" by the action,

(5) Cockram "was responsible" for the action, and

(6) the act was "out of keeping with [Journeys'] culture and . . . values."

As also previously quoted, Genesco released another clarification statement that Cockram alleges was defamatory. That statement, in relevant part, stated:

> The inappropriate references were entered by employees in the Overland Park store in [a] store-level customer database. No pre-programmed transaction codes were involved.

With regard to this statement, Cockram alleges two falsehoods:

> (1) the inappropriate references "were entered by employees," and
>
> (2) "no pre-programmed codes were involved."

As will be discussed *infra,* in its summary judgment pleading with the Court, Genesco has produced significant probative evidence establishing that the above alleged "falsehoods," in fact, are substantially truthful.[5] Consequently, it is incumbent on Cockram, in resisting the summary judgment motion, to offer up her own sufficiently probative evidence creating a genuine issue of material fact regarding the veracity (or lack thereof) of Genesco's alleged defamatory statements. *Compare Cody v. Weber*, 256 F.3d 764, 772 (8th Cir. 2001) ("While on summary judgment, a nonmoving party is entitled to a favorable view of the evidentiary record, the party must substantiate its allegations with sufficiently probative evidence to avoid an adverse judgment.").

With its summary judgment evidence, Genesco establishes that Cockram, in processing Mr. Slater's merchandise return, hit the enter key on the cash register on multiple occasions. At the time that Mr. Slater was in the Journeys store making his merchandise return, Cockram was the only employee responsible for hitting the enter key that led to the receipt being printed out with the offensive language. Indeed, Cockram's own deposition testimony provides:

---

[5] To obtain summary judgment on an issue where the movant bears the burden of proof (such as an affirmative defense), the movant "must establish beyond peradventure all of the essential elements of the . . . defense to warrant judgment in [its] favor." *Martin v. Alamo Community College District*, 353 F.3d 409, 412 (5th Cir. 2003). In this case, again assuming that the truthfulness of the statements is an affirmative defense, the sole "essential element" is that Genesco establish that the statements were substantially truthful.

7

> Q: So the bottom line is, I mean, you actually hit enter on the bad word in order for the receipt to be kicked out, correct?
>
> A: Yes.

Moreover, Genesco has produced substantial evidence that the resulting receipt containing the racial epithets was not company policy and was not acceptable to the company. Finally, Genesco has produced evidence establishing that this ability to generate an offensive return receipt was not pre-programmed in the Genesco corporate database, but was limited to the Overland Park store and its local store-wide database.

In response, Cockram argues that Journeys employees, when particularly busy, were encouraged to enter fictitious customer telephone numbers to expedite the merchandise return process. Cockram also insists that she never really looked at her computer monitor to note what various screens said. In addition, Cockram notes that a subsequent investigation by Genesco revealed that a former employee who has previously worked with Cockram in the Overland Park store (Richard Hamill) was the individual who actually programmed the cash register to print out the racist language (when an individual operating the register hit the enter key at the appropriate locations). Based on these facts, Cockram argues that her actions were not contrary to corporate policy and were tolerated by Genesco (and Journeys). Moreover, Cockram argues that Mr. Hamill was the individual who "entered" the offensive language.

The Court concludes that Cockram's evidence does not create a genuine issue as to the substantial truthfulness of Genesco's statements. In this day and age of electronic communication, it is well understood that hitting the enter key on a keyboard when a computer cursor is pointed at the word "YES" is entering the word "YES" just the same as typing the "Y,"

the "E," and the "S" and then hitting enter. As such, the Court finds that any statement that Cockram[6] "entered a highly inappropriate statement in a form used to process [a] merchandise return" to be substantially truthful. Likewise, the Court finds any statement that Cockram was "responsible" for such an action to be substantially truthful. While Mr. Hamill may have been responsible for initially entering the offensive language into the store's database, Cockram was responsible for making the entries that produced Slater's return receipt.

As to the creation of the offensive return receipt, the Court likewise cannot accept Cockram's argument that because Journeys condoned or encouraged the use of fictitious telephone numbers when processing merchandise returns, then it is false to state that Journeys "would not tolerate" the action, or that Journeys was "shocked and sickened" by the action, or that the act was "out of keeping with [Journeys'] culture and . . . values." Cockram attempts to equate Journeys policy on fictitious telephone numbers with corporate acceptance of using racially offensive language on merchandise receipts. No reasonable person would interpret Genesco's statement in such a light. *Compare Turnbull v. Herald Company*, 459 S.W.2d 516, 519 (Mo. App. [E.D.] 1970) (an alleged defamatory "statement was substantially true [if] that the gist or sting of the statement was true").

Inasmuch as the Court concludes that Genesco has established as a matter of summary judgment law that the alleged defamatory statements were substantially true, Cockram's sole remaining claim of defamation fails. Having found that summary judgment is appropriate due to the substantial truthfulness of the allegedly defamatory statement, it is unnecessary for the Court

---

[6] It should be noted that neither of Genesco's alleged defamatory statements identifies Cockram by name. In fact, neither statement reveals the gender, race or age of the subject employee.

to consider or address Genesco's arguments regarding whether the statements at issue were published with the requisite degree of fault or whether Cockram's reputation was damaged.

Accordingly, it is

**ORDERED** that *Defendant Genesco, Inc.'s Motion For Summary Judgment*, filed December 9, 2010 [Doc 45] is **GRANTED** and judgment is granted in favor of defendant Genesco, Inc.

*/s/ John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**